VANDER VEEN *v.* CORRIGAN, HILLIKER & CORRIGAN.

SALES—STOCK SALE—EXCHANGE—EVIDENCE—SUFFICIENCY.

In an action by the administrator of an estate for money paid by him to defendant for stock purchased by deceased in his lifetime, plaintiff's claim that the payment was a mistake, and that the transaction between deceased and defendant was an exchange of stock rather than a purchase and sale, and that nothing was owing to defendant when the money was paid, *held,* not supported by the record, which shows that deceased left certain stock with defendant to be sold, and, when sold, the proceeds were to be credited on the purchase price of the stock in question, but that said stock was never sold, and therefore deceased was entitled to no credit thereon.[1]

Error to Kent; Brown (William B.), J. Submitted April 11, 1924. (Docket No. 63.) Decided December 10, 1924.

Assumpsit by M. C. Vander Veen, administrator of the estate of E. J. Conroy, deceased, against Corrigan, Hilliker & Corrigan for an amount paid by mistake. Judgment for defendant *non obstante veredicto.* Plaintiff brings error. Affirmed.

*John M. Dunham,* for appellant.

*Norris, McPherson, Harrington & Waer,* for appellee.

STEERE, J. At the time this case was tried plaintiff was administrator of the estate of E. J. Conroy, a fuel dealer in Grand Rapids doing business under the name of the Conroy Coal Company, who died on September 9, 1922. Defendant is a brokerage house in Grand Rapids. This action was brought by plaintiff to re-

---

[1]Sales, 35 Cyc. p. 611.

cover the sum of $761.09 with interest paid by him as special administrator to defendant for 21 shares of Cities Service Bankers stock purchased from it by Conroy during his lifetime. Defendant was precluded from giving testimony equally within the knowledge of deceased and rested at conclusion of plaintiff's proofs, which consisted of his own testimony and written communications between defendant and Conroy. When the parties rested defendant moved for a directed verdict. Plaintiff's counsel contended that whether he was induced to pay for the stock by concealment and fraudulent representations of defendant was a question of fact for the jury. The court reserved defendant's motion for a directed verdict, saying: "I am submitting this case to the jury now on what seems to me the only possible theory and reserving to the defendant the right to present the motion for a directed verdict later." The jury gave verdict in plaintiff's favor for the amount claimed. Defendant then moved for judgment notwithstanding the verdict and, after hearing arguments of counsel, the court vacated said verdict and entered judgment for defendant.

Plaintiff's testimony shows that after taking possession of deceased's property and effects as administrator he learned that defendant "held certain stock and had a claim against Mr. Conroy for some amount," that he called up defendant's office by telephone "to get the amount Mr. Conroy owed them" and was given "some figures they claimed were owing them at that time," for which he was advised certain stock was held as collateral.

On October 3, 1922, he went to defendant's office, investigated the value of Cities Service Bankers stock and gave a check payable to the company signed by himself as administrator for $761.09 to cover defendant's claim, receiving therefor three certificates of stock issued in the name of E. J. Conroy, one for 21

shares of Cities Service stock, one for 27 shares common stock and one for 54 shares preferred stock of the Auto-Indicator Company.

Plaintiff had in his possession as administrator certain letters and other papers relating to Conroy's dealing with defendant. He testified that, some time after paying defendant's account and receiving the three certificates of stock, he found amongst Conroy's papers an account which he produced in evidence. It is written on a cross-ruled bill-head of defendant. Beginning at the top it reads as follows:

"CORRIGAN COMPANY.
"Grand Rapids, Michigan.
"E. J. CONROY,
"144 Prescott St.
"1920 Amt. Dec. 9   21 Bankers.   $672.00.

|  |  |  |
|---|---|---|
| 54—$10.50 | $567.00 |
| 27—  4.50 | 121.50 |
|  | 688.50 |
|  | 672.00 |
|  | 16.50 |
|  | 15.33 |
|  | 31.83 |
|  | 15.33 |
|  | 47.16 |

(In a pen- or pencil-drawn circle near the middle of the sheet is written):

"Paid
Mch 1, 7.74
Henry L. Shertz & Co.
N. Y.
60 Wall St."

At the foot of the sheet is the following:

"Received from E. J. Conroy 54 shares Auto-Ind. Pfd. and 27 shares Auto-Ind. Com. in payment for Cities Service Bankers.

"JAS. DOBBELAAR."

It is contended for plaintiff that this sub-script by Dobbelaar "establishes conclusively" that he and decedent effected a trade of certain stock.   Assuming that Dobbelaar was in defendant's service and that the memorandum was written by him, which is left to inference, there is no evidence of the capacity in which he was employed or that he was authorized to bind defendant by making an exchange of stock even if he was engaged as its salesman.   But conceding that he was, subsequent correspondence which passed between Conroy and defendant shows that the deal in regard to this stock was not from the beginning recognized as an exchange of stocks.   On the date of the memorandum in question, December 9, 1920, defendant sent Conroy a straight bill of $672 for 21 shares Cities Service stock "sold to you—price $32," and on December 15, 1920, wrote him as follows:

"Mr. E. J. CONROY,
   "Prescott Street,
   "City.
   "*Dear Sir:*  On December 9th we sold you 21 shares Cities Service Bankers—$32, amounting to $672.00. This stock is now in our office awaiting transfer instructions.
   "We will be pleased to have your check for the above amount along with transfer instructions so that we may have stock transferred promptly.
   "Trusting you will give this your prompt attention, we are," etc.

On November 17, 1921, Conroy wrote defendant:

"CORRIGAN & CO.
   "City.
   "*Gentlemen:*
   "Attention Mr. Phil Corrigan.
   "Confirming conversation with you this morning, this will be your authority for this week only, to sell my Auto-Indicator stock at $10.00 on the preferred and $4 on the common.

"This option at the above prices expires Saturday noon, November 19th.

"Yours very truly,
"E. J. CONROY."

On January 1, 1922, defendant sent Conroy another straight bill for 21 shares Bankers Cities Service stock with accumulated interest.

On February 2, 1922, Conroy wrote defendant:

"CORRIGAN COMPANY,
    "Michigan Trust Bldg.
    "City.
    *"Gentlemen:*
    "Attention Mr. Phil Corrigan.
    "I am herewith enclosing your statement which I received this a. m., and will say that I am very much displeased with same as I made a personal visit to your office and talked this matter over with you and my buying of Bankers was contingent upon sale of my Auto-Indicator. However, I agreed to hold the Bankers and you were to handle Auto-Indicator as soon as possible. The original buying price of Bankers was $672.00 and I am continuing to receive statements such as enclosed.
    "I know that you gave instructions to your bookkeeping department and that is my reason in sending this to you to find out just what is the matter.

"Yours very truly,
"E. J. CONROY."

On August 18, 1922, Conroy wrote defendant:

*"Gentlemen:* Will you please advise me promptly what action is being taken towards securing sale and closing up Auto-Indicator stock which you are now holding for me in exchange for Cities Service. As I would like to get the matter closed up at once, I would thank you to give this your immediate attention.

"Yours very truly,
"E. J. CONROY."

Defendant replied to this on August 21, 1922:

*"Dear Mr. Conroy:* We have your favor of the 18th inst., regarding your Auto-Indicator stock which was to be sold and the amount applied on the purchase

of Bankers shares.  We beg to advise that we have been putting forth our very best efforts on the Auto-Indicator stock and have not been successful to date. We are quite anxious ourselves to get this transaction cleaned up and will advise you as soon as we get anything on it.

"Yours very truly,
"CORRIGAN, HILLIKER & CORRIGAN."

This letter was the last communication between the parties so far as shown.  Mr. Conroy's death occurred the fore part of the following month and plaintiff became administrator of his estate about October 1st.  As such he came into possession of these and other papers relating to deceased's business affairs, and was carrying on the fuel business at the time of this trial.  Just when or how he learned of Conroy's dealings with defendant he does not clearly disclose, but when he called up its office to learn "the amount Mr. Conroy owed them" and asked for "a statement of the amount due from Mr. Conroy" he not only received an answer over the telephone but on the same day defendant sent a statement as requested, writing him as follows:

"September 20, 1922.

"Mr. M. C. VANDER VEEN,
  c/o Conroy Coal Company.
  "Prescott Street,
  "Grand Rapids, Michigan.

  *"Dear Sir:* In accordance with your request of to-day, we are enclosing herewith statement of the account of E. J. Conroy (deceased).

  "There will be a small item of accrued interest to be computed up to date of settlement.

"Yours very truly," etc.

The statement contained six credit and eleven debit entries, showing that Conroy had purchased other stocks as well as the 21 shares of Cities Service Bankers stock, his debit balance shown by the statement being $711.32.  Amongst other things the statement shows 180 shares of Cities Service Bankers

stock belonging to Conroy and held by defendant as collateral. Plaintiff admitted on cross-examination that when he left the defendant's office on October 3d he received from defendant not only certificates for the 21 shares of Cities Service Bankers stock and the Auto-Indicator stock, but also certificates for 159 more shares of Cities Service Bankers stock issued to Conroy, all of which was conceded to have been paid for by Conroy except the 21 shares of Cities Service stock in question here. After ascertaining the value of Cities Service stock he voluntarily paid the $761.09 in full liquidation of the account.

While insisting that the documentary evidence shows an exchange of stock in the first instance, defendant's ultimate claim as stated in its counsel's brief is that—

"because of the decline in stock values—and especially Auto-Indicator stock—Mr. Corrigan refused to go through with this transaction and that after some correspondence and verbal negotiations, a modified arrangement was made whereby defendant was to sell decedent's Auto-Indicator stock and would keep the 21 Bankers shares only if Corrigan sold the other stock. In other words, we claim the deal became entirely contingent and dependent upon the sale of the Auto-Indicator stock. Defendant never made that sale nor carried out its agreement."

That claim evidently eliminates from the case plaintiff's charge of fraud as set out in his declaration, and plants his right to recover on the theory that the correspondence between the parties shows Conroy bought the Cities Service stock on condition defendant would sell his Auto-Indicator stock, which it failed to do.

The trial court found that plaintiff "failed to meet the burden of proof" by showing such a contract. But if it be conceded the purchase involved such a contingency, Conroy himself later positively fixed a price at which his Auto-Indicator stock must be sold, with a time limit, rendering it impossible for defendant

to perform.   Immediately following the purchase of the 21 shares of stock in question Conroy was plainly notified by a bill from defendant that it was bought for and by him with a statement of the price.   Six days later defendant wrote him referring to the bill previously sent and requested his check for the amount. His self-serving letter with reference to a contingent purchase does not rise to the dignity of proof to sustain plaintiff's theory of a different subsequent contingent contract resulting from Corrigan's refusal to perform owing to declining prices, and if such was the case he could not thereafter escape liability through imposing upon the contingency he claimed a condition rendering performance impossible, by placing an excessive price upon the stock defendant was to sell for him.

While the death of the party to this transaction and consequent disability of the other to testify necessarily leaves much to conjecture, after a careful study of this record we are impressed that it fairly supports the following excerpt from the opinion of the trial judge in granting defendant's motion for judgment notwithstanding the verdict:

"The only legal conclusion to be drawn from all of the facts which are undisputed in this case, is that the defendant sold the Cities Service Bankers stock to the deceased, and that the defendant was to sell the Auto-Indicator stock of the deceased at prices to be designated by the deceased.   Had the defendant been able to sell such stock at prices given by the deceased, it would have been proper for the defendant to credit the amount received on the purchase price of the Cities Service stock, but as the Auto-Indicator stock was not sold, the deceased was entitled to no credit on the purchase price of the Cities Service stock, but was entitled merely to a return of his Auto-Indicator stock, which his administrator obtained.   The court finds that the defendant did make efforts to sell this stock, as shown by the only competent evidence in existence, but that a sale was not effected.   Before

a sale was effected, the administrator of decedent's estate, instead of directing the defendant to continue making efforts to sell the stock at a price designated, elected to accept a return of the stock, thereby putting it out of the power of the defendant to make further efforts to dispose of the same."

Plaintiff had the documentary evidence introduced here in his possession and, with exception of the Dobbelaar paper, makes no claim that he did not know of them and their contents, with ample opportunity and time to investigate before he voluntarily went to defendant's office and made the payment he now seeks to recover.

The judgment will stand affirmed.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.